IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MOHAMMAD RAED KARAJA,<br><br>Petitioner-Plaintiffs<br><br>vs.<br><br>CHAD WOLF, in his official capacity as Acting Secretary of the U.S. Department of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MATTHEW T. ALBENCE, in his official capacity as Deputy Director and Senior Official Performing the Duties of the Director for the U.S. Immigration and Customs Enforcement; PATRICK D. CONTRERAS in his official capacity as Field Office Director, Enforcement and Removal Operations, Houston Field Office; and RANDY TATE, in his official capacity as Warden of the Montgomery Processing Center,<br><br>Respondents-Defendants. | A # 072-414-785<br><br>Case No. 4:20-cv-1973<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

# PETITION FOR WRIT OF HABEAS CORPUS
# PURSUANT TO 28 U.S.C. § 2241

### INTRODUCTION

Now comes Mohammad Raed Karaja, and hereby petitions this Honorable Court to issue a writ of habeas corpus to review his unlawful detention by the US Immigration & Customs Enforcement ("ICE"). This action is brought pursuant to 27 USC Section 1331, 28 USC Section 2241, 5 USC Section 551 et Seq., 28 USC Section 2201 et Seq., and the All Writs Act, 28 USC Section 1651, for declaratory and injunctive relief to protect his rights under the Due Process Clause of the Fifth Amendment to the Constitution and Federal Law. Respondent is seeking immediate release as he is suffering from a repeated detention by ICE when ICE has not demonstrated that deportation is foreseeable nor imminent. In support of this petition, Petitioner states as follows:

### JURISDICTION AND VENUE

1. This Honorable Court has federal question jurisdiction under 28 U.S.C. Section 1331 as well as jurisdiction over actions of Writs of Habeas Corpus under 28 U.S.C. Section 2241.This action arises under the Constitution of the United States, and the Immigration and Nationality Act (INA), 8 U.S.C. §1101 *et seq.*, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No.104-208,110Stat.1570, and the Administrative Procedure Act (APA),5U.S.C.§701 *et seq.* This Court has jurisdiction under 28 U.S.C. § 2241, Art. I § 9, Cl. 2 of the United States Constitution (Suspension Clause), and 28 U.S.C. §

1331, as the Petitioner is presently in custody under color of the authority of the United States, and as such is in violation of the Constitution, laws, or treaties of the United States. See *Zadvydas v. Davis,* 533 U.S. 678, 121 S. Ct. 2491 (2001).

2. Venue lies in the United States District Court for the Southern District of Texas because Petitioner is detained by Respondents at ICE's Montgomery Processing Center ("MPC"), which is located within the Southern District of Texas. 28 U.S.C. § 2242. Venue is proper in the Southern District of Texas because a substantial portion of the relevant events occurred in the District and because multiple Respondents reside in the District. 28 U.S.C. § 1391(b), (e)(1).

### PARTIES

Petitioner

3. Petitioner Mohammad Raed Karaja is a twenty nine-year-old stateless individual. On January 13, 2020, Karaja checked in to the Immigration and Customs Enforcement ("ICE") office for his Supervision Appointment where he was arrested and detained by ICE for failing to charge his ankle bracelet. To date, he remains detained at the MPC in Conroe, Texas.

Respondents

4. Respondent Chad Wolf is the Acting Secretary for DHS. In this capacity, he has the responsibility for the administration of immigration laws pursuant to 8 U.S.C. § 1103(a). He has authority over ICE and its field offices, and has authority to order the release of Petitioner. At all times relevant to this complaint, Respondent Wolf was acting

within the scope and course of his position as the Acting Secretary for DHS. He also is a legal custodian of Petitioner. He is sued in his official capacity.

5. Respondent ICE is a federal law enforcement agency within the Department of Homeland Security ("DHS"). ICE is responsible for the criminal and civil enforcement of immigration laws, including the detention and removal of immigrants. Enforcement and Removal Operations ("ERO"), a division within ICE, manages and oversees the immigration detention system. Respondent ICE is a legal custodian of Petitioner.

6. Respondent Matthew T. Albence is the Deputy Director and Senior Official performing the duties of the director of ICE. Respondent Albence is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants. Respondent Albence is a legal custodian of Petitioner. At all times relevant to this complaint, Respondent Albence was acting within the scope and course of his position as an ICE official. He is sued in his official capacity.

7. Respondent Patrick Contreras is the Field Office Director for ERO in the Houston Field Office, an agency within the U.S. Department of Homeland Security. ERO is a division of ICE that manages and oversees the immigration detention system. In his capacity as Field Office Director for ERO, Respondent Contreras exercises control over and is a custodian of immigration detainees held at all of the Southeast Texas facilities that house ICE detainees, including the MPC. At all times relevant to this Complaint, Respondent Contreras was acting within the scope and course of his employment with ICE. He is sued in his official capacity.

8. Respondent Randy Tate is the Warden of the MPC in Conroe, Texas, where Petitioner is detained. Respondent Tate is the immediate, physical custodian of Petitioner. He is named in his official capacity.

## EXHAUSTION OF REMEDIES

9. Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action.

10. No statutory exhaustion requirements apply to Petitioner's claim of unlawful detention.

## STATEMENT OF FACTS

11. Petitioner Mohammad Raed Karaja is a twenty-nine-year old Stateless Individual. He entered the United States on a Non-immigrant Visitor Visa (B-2 visa) on or about December 16, 2002 when he was 11-years old. Since entering the United States, Petitioner lived with his family. Petitioner has an extended family that lives in the United States. Petitioner contributes to the family household by working at the family business.

12. On September 4, 2012, Petitioner was granted Asylum. He applied to adjust status, however, on November 23, 2015, US Citizenship and Immigration Services denied his request because of his simple burglary charge and that "he did not apply for a waiver for this inadmissibility." On November 20, 2015, Petitioner was taken into ICE custody.

13. On September 20, 2016, Immigration Judge terminated Petitioner's asylum as the court determined his Simple Burglary charge under Louisiana Penal Law was a particularly serious crime. The judge denied his applications for relief and ordered to have Petitioner removed to Jordan and in the alternative, Israel.

14. Petitioner was detained for over a year since his order of removal dated September 21, 2016. He has cooperated with ICE, however, ICE was unable to carry out his removal. During the entire period of his detention, he did not receive a custody hearing to review whether his imprisonment was justified. The government asserted that he is subject to mandatory detention under 8 USC 1226(c) and that he did not need to be provided with a hearing. He filed for a Writ of Habeas Corpus with the Northern District of Alabama on or about August 14, 2017. About three days later, the Federal District Court issued an order to show cause to the Respondents as to why he should not be released. Petitioner was subsequently released on October 10, 2017 and he was placed under the Intensive Supervision of Appearance Program ("ISAP").

15. For two years since his release, Petitioner has made efforts to comply with ISAP by notifying the officers of his address change, attending the supervision appointments, and charging his GPS ankle bracelet. On January 13, 2020, Petitioner attended his Supervision appointment with ICE. He was subsequently taken into custody because his ankle bracelet was not charged.

16. Petitioner has now been detained for over four months and similarly to his post-order detention, ICE is unable to carry out his removal to Israel or Jordan. The consulate has not issued travel documents and there is no certainty as to when, if ever, such paper will be issued. Petitioner is a stateless individual. He has no travel document, no passport, and no method of leaving the country. Petitioner is from the Occupied Palestinian Territories, which the United States does not recognize as a country. Thus, the petitioner's removal from the United States is not likely to occur within the reasonably foreseeable future.

17. He is currently detained in the MPC and has cooperated fully with all efforts by ICE to assist in his removal. June 13 will mark five months in detention and Petitioner has yet to receive any travel documents from the Jordanian or Israeli Consulates.

18. Petitioner applied for custody review in April 2020. However, On April 6, 2020 ICE decided to continue his detention, finding that Petitioner has not demonstrated he will not "pose a danger to the community, to the safety of other persons, or to property."

19. There is no evidence to suggest that detention is necessary. Petitioner is not a risk or a danger to the community. He has been living with his mother, father, and siblings since coming to the United States. He has appraised immigration and DHS of his change of address. With the exception of the March 24, 2015 simple burglary conviction and two old traffic violations, he has no other criminal history.

20. Petitioner's current detention is harming his family. He works with his father in the family car-dealership business. Petitioner has a strong command of the English language and assists his father in working with clients, completing paperwork, and inputting data. Without Petitioner's assistance, the family business is hurting. Furthermore, if he is released, he will continue to live with his mother, father, and siblings in Texas.

21. In addition, the COVID-19 places an enormous risk of spread in the facility. As of date, there are currently 39 confirmed cases of COVID-19 at the MPC. Thirty six of those detainees are currently under monitoring or isolation. The solution to prevent a rapid outbreak is to practice social distancing/social isolation in order to decrease chance of exposure. However, the MPC is incapable of following the instructions of public health authorities to limit their exposure. Thus, for the safety of the facility, the detainees, and Petitioner, we believe it's imperative that Petitioner be released. In February 2020,

Petitioner had symptoms of vomiting and high fever for 4 to 5 days. He was given pain killers and remained in his dorm with other inmates while he was ill. Petitioner has liver problems that potentially places him at higher risk of infection of COVID-19.

22. The spread of the disease continues in the United States. As of June 3, 2020 over 1.8 million people have already tested positive for the virus in the United States and at least 106,723 have died. The United States now has more reported cases than any other country in the world. In Texas, there are at least 68,056 confirmed cases and 1,741 known deaths.

23. COVID-19 infects individuals who have been exposed to respiratory droplets that contain the virus. These respiratory droplets come from an infected person who coughs or sneezes. Such droplets can spread between people at a distance of up to six feet.

24. Outcomes from COVID-19 vary from a mild upper respiratory infection to pneumonia, sepsis, and death. As of date, although there is guidance on who is deemed "high risk," health officials cannot determine with a reasonable certainty who will have mild symptoms and survive from those who will require hospitalization or even die.

25. There is no vaccine to prevent COVID-19. There is no known cure or FDA approved treatment for COVID-19 at this time. The Center of Disease Control ("CDC") and other health officials have demonstrated that the only method of control is to minimize the risk of infection by practicing social distancing and social isolation. Specifically, it is recommended that individuals maintain a distance of at least six feet from other people and increase hygiene practices such as hand-washing, face washing, and sanitization of commonly used surfaces.

26. The nature of the detention facility makes it impossible to practice the medical and public health officials' recommendations for mitigating the spread of COVID-19. Social distancing is impossible to implement as these facilities are not structurally designed to allow for the necessary physical distancing.

27. MPC fails to provide enough resources for detainees to maintain hygiene as the CDC recommends. Petitioner lives, sleeps, showers, eats, and washes his hands close to about 60 other inmates in the same hall. About 60 individuals share a small communal bathroom. Detainees do not have access to sanitizer. Petitioner's bed is approximately one foot from the bed next over. Petitioner was given one disposable face mask to use and reuse for over a week. Most Detainees in his dorm do not wear the mask. The detainees in the dorm next to Petitioner had confirmed cases of COVID-19.

28. There is little reason to delay Petitioner's release. Petitioner's release will prevent exposure and spread of COVID-19. Furthermore, Petitioner's deportation will not likely occur in the near foreseeable future. Just like his 2016 post-order detention, Petitioner is going through the same circumstances: no travel document has been issued, there is no evidence to suggest that he will be removed and; his custody review was denied in Aril 2020.

## LEGAL FRAMEWORK

I. **Petitioner's detention violates his due process rights as he has currently been detained for almost five months and no evidence suggests he will obtain a travel document and depart in the near future, if at all.**

29. Immigrant detainees are civil detainees that are afforded Fifth and Fourteenth Amendment due process protections akin to pretrial detainees. See *Zadvydas v. Davis*,

8

533 U.S. 678, 690 (2001) ("government detention violates th[e] [Due Process] Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections . . . or, in certain special and 'narrow' nonpunitive 'circumstances'" not present here).*Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment.") The "freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process clause] protects." *Zadvydas*, 533 U.S. at 690.

30. Due process requires that the nature and duration of noncriminal confinement bear "some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018). The statute provides the Attorney General discretion to detain individuals only if it was determined on a case by case basis that the alien is a "risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *Zadvydas*, 533 U.S. 678 (2001). Additionally, while the Supreme Court in *Zadvydas* recognizes a presumption of detention for ninety days and up to six months, the underlying question is whether detention "exceeds a period reasonably necessary, to secure removal." *Zadvydas*, 533 U.S. at 701.

31. In 2016, Petitioner remained in custody post order for over one year. During that period, no travel document nor passport was issued by any consulate and DHS could not effectuate his removal to Jordan and Israel. Today, Petitioner is again placed into custody. And again, no travel document, nor passport, nor any document has been issued

by Israel, the Occupied Palestinian Territories, or Jordan since his detention. His conditions have not change since he was first released in October 2017 that would demonstrate that he would be removed. The Consulates of these countries have demonstrated they will issue a travel document or passport. The Occupied Palestinian Territories is still not a recognized country by the United States and therefore Petitioner is still Stateless. In this instance, such prolonged detention is a due process violation as Petitioner's Palestinian origins will not make his removal to Jordan and Israel possible in the foreseeable future.

32. Based on the case law and regulations, Petitioner's detention is a due process violation as there is no likelihood that he will be released in the foreseeable future. Petitioner's release is warranted.

## II. Petitioner's detention is violating his Due Process Rights as it exposes Petitioner to serious illness and potential death.

33. The due process clause asserts that "the State cannot punish a pretrial detainee." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). *See also Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Therefore, civil detainees such as those held in federal immigration detention, are entitled to "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982); *In re Kumar*, 402 F. Supp. 3d 377, 384 (W.D. Tex. 2019).

34. To establish that the challenged conditions of confinement amount to punishment, the detainee need not demonstrate an official's "actual intent to punish because . . . intent

may be inferred from the decision to expose a detainee to an unconstitutional condition." *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009). "[E]ven where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices." *Hare*, 74 F.3d at 644. "[A] pervasive pattern of serious deficiencies" that subjects a detainee to the risk of serious injury, illness, or death "amounts to punishment." *Shepherd*, 591 F.3d at 454. Such a pattern is evidenced by, for example, continuing to house detainees in conditions that expose them to a known risk of serious infectious disease. *Duvall v. Dallas Cty., Tex.*, 631 F.3d 203, 208 (5th Cir. 2011). Throughout the country, district courts are ordering the release of individuals from Jail facilities that have had an outbreak of the novel virus. *See Dada v. Witte*, No. 1:20-CV-00458 SEC P, 2020 U.S. Dist. LEXIS 90600, at *8 (W.D. La. May 22, 2020) (Temporary Restraining order and Preliminary Injunction granted allowing the immediate release of certain detainees pending the resolution of their immigration proceedings.) *Barrera v. Wolf*, No. 4:20-CV-1241, 2020 U.S. Dist. LEXIS 67640, at *16, 24-25 (S.D. Tex. Apr. 17, 2020) (Here, the court ordering release of one plaintiff at the MPC who was at "high risk of serious illness or death" if she contracts COVID-19where social distancing and proper hygiene are impossible but denied release of another Plaintiff because of his violent and recent criminal history including sexual assault, assault, and Protective order violations).

35. Furthermore, in the time of the COVID-19 pandemic, holding Petitioner in custody is dangerous to the safety and wellbeing of himself, his fellow detainees, and detention staff. Currently the MPC has 39 confirmed cases and 36 individuals currently being

monitored or isolated. In addition, Petitioner is aware that that detainees are tested positive in the dorm next to his. He passes by these detainees when going to the doctor or when he is going to the cafeteria.

36. Petitioner cannot practice the required social distancing and hygiene measures while detained at MPC. Petitioner shares an enclosed dormitory with approximately 60 other detainees. Petitioner share communal bathrooms, including the sinks, toilets, and showers with other detainees. Detainees are not experiencing regular cleaning of the bathrooms. They sleep less than one foot away from each other. They eat next to each other on the tables during lunch. Recreational time is communal. No hand sanitizer is provided. Petitioner was given only given one disposable facemask to use for over a week. This places Petitioner at serious risk of being infected with COVID-19 and Respondent's are willfully indifferent in addressing this critical safety concern

### FIRST CLAIM FOR RELIEF

37. Petitioner re-alleges and incorporates the above-referenced paragraphs as set forth fully herein. Petitioner's continued detention by Respondent is unlawful and contravenes 8 U.S.C. §1231 (a) (6) as interpreted by Supreme Court in *Zadvydas*. *Zadvydas* recognizes that ICE may continue to detain aliens only for a period reasonably necessary to secure the alien's removal.

38. Petitioner has not been able to effectuate his removal due to his detention. Although, he has so far been in custody for five months and he will not be able to be removed to the occupied Palestinian territories in the reasonably foreseeable future.

## SECOND CLAIM FOR RELIEF

39. Petitioner re-alleges and incorporates the above-referenced paragraphs as set forth fully herein. Petitioner alleges that in light of the circumstances, his detention violates the substantive due process right under the Fifth Amendment of the US Constitution. Furthermore, detention is not appropriate when it runs against the purpose of detention.

40. Due process Clause of the Fifth Amendment declares that a Petitions depravation of his liberty must be narrowly tailored to serve a compelling government interest in detaining Petitioner. While *Zadvydas* recognize that a certain period of detention is reasonably necessary to secure aliens removal, in this instance, detention has prevented alien's removal.

41. The purpose of detention is to ensure the safety and wellbeing of the community, to ensure individuals will attend all court hearings, and to ensure he is not a flight risk. Petitioner is a peaceful person and with the exception of the Criminal Simple Burglary conviction and two traffic tickets, he has no other criminal history in the United States or anywhere else in the world.

42. He was detained while attending his supervision appointment because his ankle bracelet battery was not charged. He has been detained for almost five months. Petitioner is stateless and cannot obtain a travel document or passport. Petitioner's only option is to be released.

43. Petitioner alleges that in light of the equities in this case, his prolonged detention preventing him from being released violates his right to procedural due process under the Fifth Amendment of the United States Constitution.

## THIRD CLAIM FOR RELIEF

44. Petitioner re-alleges and incorporates the above-referenced paragraphs as set forth fully herein. The Fifth Amendment of the Constitution guarantees that civil detainees, including all immigrant detainees, may not be subjected to punishment.

45. However, the federal government violates this substantive due process right when it fails to satisfy its affirmative duty to provide conditions of reasonable health and safety to the people it holds in its custody, and violates the Constitution when it fails to provide for basic human need such as food, clothing, shelter, medical care, and reasonable safety for those in custody. The federal government also violates substantive due process when, acting with deliberate indifference, it subjects civil detainees to objectively unreasonable risks to their health and safety, to cruel treatment, or to conditions of confinement that amount to punishment.

46. By detaining Petitioner at the MPC, Respondents are subjecting Petitioner to an unreasonable risk of contracting COVID-19, for which there are no vaccine and no cure, and which can be lethal. Petitioner is vulnerable to an unreasonable risk of illness and death as long as he is held in detention as there has been confirmed cases of COVID-19 at the detention center. Petitioner has liver problems that potentially places him at higher risk of infection of COVID-19.

47. By subjecting Petitioner to this risk, Respondents are maintaining detention conditions that amount to punishment and are failing to ensure safety and health in violation of Petitioner's due process rights. Likewise, Respondents' continued detention of Petitioner at the MPC is deliberately indifferent to Petitioner's health and safety because only releasing Petitioner from custody can adequately protect them from COVID-19.

Respondents are aware of the serious risk posed by COVID-19 and are failing to take the only action that is appropriate: to release Petitioner.

## PRAYER FOR RELIEF

WHEREFORE Petitioner requests that the Court grant the following relief:

a. Issue a Writ of Habeas Corpus on the ground that Petitioner's continued detention violates the Due Process Clause, and order Petitioner's immediate release;

b. In the alternative, issue injunctive relief ordering Respondents to immediately release Petitioner, on the grounds that their continued detention violates the Due Process Clause;

c. Issue a declaration that Respondents' continued detention of Petitioner violates the Due Process Clause;

d. Grant any other and further relief that this Court may deem fit and proper.

Dated: 06/04/2020

Respectfully Submitted:

Mohamed Elsharnoby, Esq.
Elsharnoby and Associates
5252 Westchester Street, Suite 267
Houston TX 77005